UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――

№ 09-CV-2101 (JFB) (MLO)

―――――――――――

ANNE KELLY AND CHRISTINE LOFARO,

Plaintiffs,

VERSUS

HUNTINGTON UNION FREE SCHOOL DISTRICT AND HUNTINGTON UNION FREE SCHOOL DISTRICT BOARD OF EDUCATION,

Defendants.

―――――――――――

**MEMORANDUM AND ORDER**
December 23, 2009

―――――――――――

JOSEPH F. BIANCO, District Judge:

On May 15, 2009, plaintiffs Anne Kelly and Christine Lofaro (collectively "plaintiffs") brought this action against defendants Huntington Union Free School District and Huntington Union Free School District Board of Education (collectively "defendants") pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging that defendants violated plaintiffs' rights under the First Amendment. Specifically, plaintiffs, who are elementary school teachers, allege that defendants retaliated against them for engaging in various forms of protected speech. Before the Court is defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motion is denied in its entirety.

I. BACKGROUND

For purposes of this motion to dismiss, the Court has taken the facts described below from the Amended Complaint ("Am. Compl."). These facts are not findings of fact by the Court but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiffs, the non-moving parties.

## A. Facts

### 1. The Amended Complaint

Plaintiffs are tenured and highly credentialed elementary school teachers, both of whom have received the highest rankings in their evaluations. (Am. Compl. ¶¶ 8-9, 12-13.) Plaintiff Anne Kelly has been an elementary school teacher for about 30 years. (*Id.* ¶ 8.) Prior to the events that are the subject of this complaint, Kelly had never had any problems with the administration and never received a complaint from a parent. (*Id.* ¶ 11.) Plaintiff Christine Lofaro has been an elementary school teacher for 17 years. (*Id.* ¶ 8.) Lofaro is also Vice President of the Associated Teachers of Huntington, Intermediate Level (hereinafter "the Union"), a position she has held for about six years. (*Id.* ¶ 12.) As Vice President of the Union, Lofaro, *inter alia*, attends various meetings and classes, takes part in the negotiation process between the Union and the administration, and assists fellow teachers in resolving grievances with the administration. (*Id.* ¶ 14.)

In or about 1990, Kelly began teaching a gifted and talented program called the Scholastic Enrichment and Resource for Children in Huntington (hereinafter "SEARCH"). (*Id.* ¶ 17.) Lofaro began teaching for the SEARCH program in or about 1996. (*Id.*) In 2004, plaintiffs obtained special teaching certifications that were required to continue teaching in the SEARCH program. (*Id.* ¶¶ 18, 22.) The goal of the SEARCH program, which began in 1980 (*id.* ¶ 19), is to provide small group instruction to students who are in the top ten percent of their grade's population and to provide a challenging and stimulating curriculum different from that of normal classrooms. (*Id.* ¶ 20.) At the time in question, there were 2.5 SEARCH teachers, including Kelly and Lofaro, and one Chairperson of the SEARCH program, Maryann Daly (hereinafter "Daly"). (*Id.* ¶ 22.) Plaintiffs allege that they developed and enhanced the program "all on their own" and that the program's success "can only be attributed to Kelly and Lofaro's hard work." (*Id.* ¶¶ 23-24.) Plaintiffs have gotten nothing but positive feedback from their students' parents. (*Id.* ¶ 25.)

In or about August 2007, Lofaro applied for the position of Chairperson of the SEARCH program. (*Id.* ¶ 26.) After the interview, the Assistant Superintendent of personnel told Lofaro that her "edge" had come out in the interview. (*Id.* ¶ 27.)

Plaintiffs allege that throughout the time in which Daly was a teacher and then Chairperson of the SEARCH program, Daly engaged in inappropriate conduct that was detrimental to the SEARCH program and that was sometimes unethical. (*Id.* ¶¶ 28-29.) Specifically, plaintiffs allege that Daly: did not attend meetings to discuss the curriculum; authorized a mass mailing to the parents of SEARCH students to support a Board of Education candidate; prohibited plaintiffs from attending a class trip on a boat (resulting in Daly chaperoning 56 students by herself); and tutored students prior to their taking a test for entrance into the SEARCH/Math Olympiad Program. (*Id.* ¶ 30.)

In or about August 2007, plaintiffs met with the Assistant Superintendent to discuss Daly's alleged misconduct and its negative impact on the SEARCH program. (*Id.* ¶ 31.) The Assistant Superintendent did not offer guidance or address the issue and instead stated that he wished plaintiffs would "learn to play nice in the sandbox." (*Id.* ¶ 32.)

After the August 2007 meeting, Daly continued to engage in alleged misconduct. Specifically, Daly provided no guidance to plaintiffs about the second grade program and did not attend meetings that she had scheduled, forcing plaintiffs to write the curriculum by themselves. (*Id.* ¶ 33.) This conduct continued over the next two years. (*Id.*) Plaintiffs continued to complain to defendants about Daly's alleged misconduct and its negative impact on the SEARCH program and its students. (*Id.* ¶ 34.) Defendants refused to answer plaintiffs' complaints. (*Id.*)

On February 26, 2009, plaintiffs were summoned to a meeting with the Assistant Superintendent of Curriculum, Barbara Lacey. (*Id.* ¶ 36.) Lacey informed each plaintiff separately that two of the 2.5 SEARCH teacher positions were going to be eliminated in the draft budget for the 2009-10 school year. (*Id.* ¶ 37.) Lofaro attempted to ask questions regarding this information, but Lacey did not answer, saying only that it was defendants' decision to eliminate the two SEARCH positions. (*Id.* ¶ 38.) Plaintiffs were "shocked and distraught" upon hearing this information. (*Id.* ¶¶ 39-41.) Plaintiffs were not told at any time that they could not reveal the information regarding the elimination of the two SEARCH positions or that the information was confidential. (*Id.* ¶ 44.)

At dismissal time on February 26, 2009, Kelly informed her students that the SEARCH program was being changed and that two SEARCH positions were being eliminated. (*Id.* ¶¶ 42, 45.) Kelly also told the students to tell their parents about this issue and to ask their parents to attend the next Board of Education meeting to speak out against the changes to the SEARCH program. (*Id.*) Plaintiffs then went to the Woodhull Intermediate School, where Lofaro informed her students that there would be a significant change in the SEARCH program for the next year, and that plaintiffs' SEARCH positions were being eliminated. (*Id.* ¶ 43.) Lofaro also told the students that she was very upset about this change to the program, and that it was important for the students' parents to know about the fate of the program. (*Id.*) Plaintiffs believed that it was important to tell the students about the changes to the SEARCH program because it "directly affected their education" and believed that it was important to tell the students' parents "so they could voice their opposition to the Board and be informed about the future of their own child's education." (*Id.* ¶¶ 51-52.)

On March 3, 2009, Lofaro was summoned to the principal's office, where she was questioned by Dr. Ken Card about what she had told her students on February 26. (*Id.* ¶ 45.) After hearing Lofaro's explanation, Card responded that the administration was "furious" and that Lofaro had "crossed the line." (*Id.* ¶ 46.) Card also stated that the administration and the Board of Education were viewing Lofaro's actions as "political." (*Id.*) Lofaro stated that her actions were not political but rather that she was upset about the changes to the SEARCH program and that it was important to inform her students and the students' parents. (*Id.*) Card said that there were numerous telephone calls from angry parents, that Lofaro would face some sort of discipline for her actions, and that the administration and the Board were going to "make an example" of her. (*Id.* ¶ 47.)

On March 4, 2009, Mary Stokkers, principal of Jack Abrams Intermediate met with Kelly, questioned her about her actions

3

on February 26, and repeated everything that had been said to Lofaro. (*Id.* ¶ 48.) At this meeting, Kelly was informed for the first time that she should not have disclosed the information regarding the elimination of the two SEARCH positions to her students. (*Id.* ¶ 48.)

At some point after February 26, plaintiffs were threatened with "3020a proceedings." (*Id.* ¶ 49.) Plaintiffs were told that they could avoid such disciplinary proceedings if they agreed to pay a monetary fine, transfer to different positions, and forfeit their rights to grieve such a transfer despite their rights under the collective bargaining agreement. (*Id.*) Plaintiffs declined the offer. (*Id.* ¶ 50.)

At some point after February 26, parents of students in the SEARCH program attended the next Board meeting and were vocal about the changes to the SEARCH program. (*Id.* ¶ 56.) While the program was restored (*id.*), plaintiffs were still removed from their positions. (*Id.* ¶ 57.)

At some point after February 26, plaintiffs informed defendants that they had retained counsel and intended to commence legal proceedings if a resolution could not be reached. (*Id.* ¶ 58.) Defendants subsequently brought 3020-a disciplinary charges against plaintiffs for "behavior unbecoming a teacher, neglect of duty, and insubordination." (*Id.* ¶ 58.) Plaintiffs allege that these proceedings were brought in retaliation for their complaints about Daly and for their February 26 speech to students, their statements about obtaining counsel and commencing legal proceedings, and for Lofaro's "engaging in protected union activities." (*Id.* ¶¶ 34, 58.) Plaintiffs allege that they have suffered damages as a result of defendants' actions. (*Id.* ¶ 59.)

2. Defendants' Affidavits

In connection with their motion to dismiss, defendants submitted several affidavits from teachers who describe some of the circumstances of plaintiffs' February 26 speech to students about the SEARCH program.[1]

B. Procedural History

Plaintiffs filed the complaint in this action on May 15, 2009. Plaintiffs filed an amended complaint on July 17, 2009. On September 18, 2009, defendants filed the instant motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs submitted a memorandum in opposition on November 2, 2009. Defendants replied on December 3, 2009. Oral argument was held on December 18, 2009. This matter is fully submitted.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*,

---

[1] For the reasons discussed *infra*, the Court declines to consider this evidence.

4

550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. *See* 129 S. Ct. at 1937. The Court instructed district courts to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57).

III. DISCUSSION

As an initial matter, the Court cannot consider defendants' evidentiary submissions in deciding the instant motion to dismiss. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (In deciding a motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint."). Defendants' affidavits are not referred to in the Amended Complaint nor are they integral to the Amended Complaint. *See id.*; *Coggins v. County of Nassau*, No. 07-cv-3624, 2008 WL 2522501, at *6-7 (E.D.N.Y. June 20, 2008). The Court also declines to convert the instant motion into a motion for summary judgment. "Federal courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment." *Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (citations omitted). Plaintiffs in this action are entitled to discovery before having to oppose a motion for summary judgment.

Plaintiffs bring their First Amendment retaliation claims pursuant to Section 1983.[2] Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). For claims under Section 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v.*

---

[2] In the Amended Complaint, plaintiffs also make passing reference to defendants' alleged conduct violating "all related provisions" of the New York Constitution. (Am. Compl. ¶ 61.) In their Memorandum of Law in Opposition to Defendants' Motion to Dismiss (hereinafter "Pls.' Br."), plaintiffs refer to the Fifth and Fourteenth Amendments as well as New York State Executive Law § 290, *et seq.*, and Title 8 of the New York City Administrative Code. (Pls.' Br. at 2.) At oral argument, however, plaintiffs' counsel clarified that they only allege claims under the First Amendment pursuant to Section 1983.

5

*Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted).

Here, for the purposes of this motion, the parties do not dispute that defendants were acting under color of state law. The question presented, therefore, is whether defendants' conduct deprived plaintiffs of the rights they assert under the First Amendment. Specifically, plaintiffs claim that they were retaliated against for: (1) their complaints to defendants regarding alleged misconduct by Daly; (2) their February 26 speech to students regarding changes to the SEARCH program; and (3) their statement that they had retained counsel and intended to commence legal proceedings. Lofaro also alleges that defendants retaliated against her for engaging in protected union activities.

The Second Circuit has "described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). Where, as here, public employees bring retaliation claims based on the First Amendment, the plaintiffs must prove that: "(1) they engaged in constitutionally protected speech because they spoke as citizens on a matter of public concern; (2) they suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008). However, defendants may still "escape liability if they can demonstrate that either (1) the defendant would have taken the same adverse action against the plaintiff regardless of the plaintiff's speech; or (2) the plaintiff's expression was likely to disrupt the government's activities and that the harm caused by the disruption outweighs the value of the plaintiff's expression." *Skehan*, 465 F.3d at 106. The latter is known as the "*Pickering* balancing test" and is a question of law for the Court. *See Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004) (referring to *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). Even if the government prevails on the *Pickering* test, plaintiff may still succeed by showing that the adverse action was in fact motivated by retaliation and not by any fear of a resultant disruption. *See Reuland v. Hynes*, 460 F.3d 409, 415 (2d Cir. 2006).

Defendants contend that plaintiffs have failed to state a claim because: (1) they did not speak as citizens on matters of public concern; (2) they did not face adverse employment action; and (3) there is no causal connection between their complaints about Daly and any alleged adverse action.[3] Defendants also argue under *Pickering*, with respect to plaintiffs' February 26 speech to students, that even if plaintiffs did speak as citizens on matters of public concern, defendants' interest in regulating the speech outweighs plaintiffs' interests in the speech.

---

[3] Defendants also argue that plaintiff Lofaro has failed to allege First Amendment retaliation based on her union activities. Specifically, defendants argue that plaintiffs have not specified the union activities upon which any such retaliation was based nor have plaintiffs alleged a causal connection between those activities and any adverse action. Because the Court concludes that plaintiffs have properly alleged First Amendment retaliation based on their other speech, the Court need not address this argument at the motion to dismiss stage. *See Morey v. Somers Central Sch. Dist.*, No. 06 Civ. 1877, 2007 WL 867203, at *12 (S.D.N.Y. Mar. 21, 2007) (denying motion to dismiss) ("[B]ecause plaintiff sufficiently pleaded a causal connection with regard to his statements concerning the asbestos, he has established a *prima facie* case for First Amendment retaliation, and we need not address this [union activity] issue any further.").

6

For the reasons set forth below, defendants' motion to dismiss is denied in its entirety.

A. Speech as a Citizen

1. Legal Standard

As the Second Circuit recently emphasized, "[i]t is established law in this Circuit that, '[r]egardless of the factual context, we have required a plaintiff alleging retaliation to establish speech protected by the First Amendment.'" *Sousa v. Roque*, 578 F.3d 164, 169-70 (2d Cir. 2009) (quoting *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008)). More specifically, "[t]o determine whether or not a plaintiff's speech is protected, a court must begin by asking 'whether the employee spoke as a citizen on a matter of public concern.'" *Sousa*, 578 F.3d at 170 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). It is critical to note that this test contains two separate requirements – namely, (1) that the employee speak as a citizen, and (2) that the employee speak on a matter of public concern. If either of these requirements is not met, then plaintiff's First Amendment retaliation claim must fail as a matter of law. *See Sousa*, 578 F.3d at 170 ("If the court determines that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.'" (quoting *Garcetti*, 547 U.S. at 418)).

In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the United States Supreme Court clarified the threshold inquiry for a First Amendment retaliation claim in the public employment context. To determine whether the speech at issue is constitutionally protected, the court must first decide whether the plaintiff was speaking as a "citizen," rather than as a public employee. *Id.* at 421. "If the answer is 'no,' then no First Amendment claim arises, and that ends the matter." *Caraccilo v. Village of Seneca Falls, N.Y.*, 582 F. Supp. 2d 390, 405 (W.D.N.Y. 2008). In *Garcetti*, the Supreme Court explained that:

> [r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

547 U.S. at 421-22.

*Garcetti*, however, did not "articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." 547 U.S. at 424. Although the Supreme Court did not set forth specific criteria for determining when speech is made pursuant to an employee's officials duties, it instructed that the inquiry "is a practical one" because "the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Garcetti*, 547 U.S. at 424-25. It also noted that speech by a public employee retains some possibility of First Amendment protection when it "is the kind of activity engaged in by citizens who do *not* work for the government." *Id.* at 423 (emphasis added). To illustrate its point by way of comparison, *Garcetti* "also list[ed] examples

7

of prototypical protected speech by public employees, namely 'mak[ing] a public statement, discuss[ing] politics with a coworker, writ[ing] a letter to newspapers or legislators, or otherwise speak[ing] as a citizen.'" *Davis v. McKinney*, 518 F.3d 304, 311-12 (5th Cir. 2008) (quoting *Spiegla v. Hull*, 481 F.3d 961, 967 (7th Cir. 2007)).

Since *Garcetti*, some lower courts have developed more guidelines for determining whether speech is made pursuant to a public employee's official duties. Although none of the following factors is dispositive, the Court may consider: the plaintiff's job description; the persons to whom the speech was directed; and whether the speech resulted from special knowledge gained through the plaintiff's employment. *See Caraccilo*, 582 F. Supp. 2d at 405. As indicated by *Garcetti*, two relevant factors that, considered in isolation, are not dispositive are whether the speech occurs in the workplace and whether the speech concerns the subject matter of the employee's job. *See* 547 U.S. at 420-21; *accord Abdur-Rahman v. Walker*, 567 F.3d 1278, 1282 (11th Cir. 2009). Again, in general, "[a]lthough there is no simple checklist or formula by which to determine whether the employee was speaking as a private citizen or as a public employee . . . 'the cases distinguish between speech that is the kind of activity engaged in by citizens who do not work for the government and activities undertaken in the course of performing one's job.'" *Caraccilo*, 582 F. Supp. 2d at 410 (quoting *Davis*, 518 F.3d at 312-13) (additional quotation marks and citation omitted).

Again, the Court recognizes that none of the aforementioned factors, including the motivation by the plaintiff in engaging in the speech, is dispositive. *See, e.g.*, *Caracillo*, 582 F. Supp. 2d at 412 ("[T]he fact that plaintiff's speech to these officials may have *related* in some way to her job is not dispositive of whether it was made *pursuant* to her job duties or that it was unprotected[.]") (emphasis in original); *Davis*, 518 F.3d at 313 n.3 ("We recognize that it is not dispositive that a public employee's statements are made internally.").

2. Application

Defendants argue that when plaintiffs complained about Daly's alleged misconduct, they did so not as citizens, but rather pursuant to their official duties.[4] Therefore, defendants argue that the speech is not protected as a matter of law. However, the Court cannot conclude at this stage of the proceedings that plaintiffs' speech about Daly was made pursuant to official duty. Plaintiffs allege that they "had a meeting with the Assistant Superintendent" to discuss Daly's alleged misconduct, as discussed above. (Am. Compl. ¶ 31.) When the alleged misconduct continued, plaintiffs "continued to complain to Defendants." (*Id.* ¶ 34.) Based solely on the allegations in the Amended Complaint,

---

[4] Defendants do not argue that plaintiffs' February 26 speech to students about the SEARCH program was made pursuant to their official duties, and so the Court need not address this issue. The Court notes that "[i]t is an open question in this Circuit whether *Garcetti* applies to classroom instruction." *Panse v. Eastwood*, 303 F. App'x 933, 934 (2d Cir. 2008) (summary order). In any event, plaintiffs allege that when speaking to the students, "Kelly and Lofaro were not speaking pursuant to their duties" (Am. Compl. ¶ 54), and that Kelly spoke to her students not during class time but at "dismissal time" (*id.* ¶ 42). Accordingly, given these allegations, the Court cannot decide whether plaintiffs spoke as citizens or pursuant to official duty at the motion to dismiss stage. *See McLaughlin v. Pezzolla*, No. 06-CV-0376, 2007 WL 676674, at *8 (N.D.N.Y. Feb. 28, 2007) (denying motion to dismiss on issue of plaintiffs' official duty).

and drawing all reasonable inferences in the light most favorable to plaintiffs, the Court cannot rule as a matter of law that plaintiffs' speech about Daly was made pursuant to plaintiffs' official duties.[5] The inquiry under *Garcetti* is "a practical one," 547 U.S. at 424-25, and requires consideration of various facts that are not before the Court on this motion to dismiss. For instance, there is no allegation in the Amended Complaint with respect to plaintiffs' job descriptions or the specific circumstances of plaintiffs' complaints. The fact that plaintiffs' speech related to their jobs is not dispositive. *See Garcetti*, 547 U.S. at 421 ("The [speech] concerned the subject matter of [plaintiff's] employment, but this, too, is nondispositive. The First Amendment protects some expressions related to the speaker's job." (citing *Pickering*, 391 U.S. at 573)). To hold that plaintiffs' discussion with the Assistant Superintendent and continued complaints were pursuant to official duty, without any further detail, would be to hold that any complaints to a supervisor regarding alleged misconduct by a co-worker would be unprotected. The Court rejects this broad proposition. *See, e.g.*, *Sassone v. Quartararo*, 598 F. Supp. 2d 459, 465 (S.D.N.Y. 2009) (denying motion to dismiss and finding that plaintiff teachers' complaints to supervisors about other teachers' misconduct could be speech made "as citizens"); *see also McLaughlin v. Pezzolla*, No. 06-CV-0376, 2007 WL 676674, at *8 (N.D.N.Y. Feb. 28, 2007) (denying motion to dismiss and holding that "the determination of the scope of Plaintiff's official duties, and whether her speech was made pursuant to, or outside of, these duties, must await a different day").

### B. Matter of Public Concern

"The Supreme Court has defined 'a matter of public concern' as one that 'relat[es] to any matter of political, social, or other concern to the community.'" *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). "The inquiry into the protected status of speech is one of law, not fact." *Connick*, 461 U.S. at 148 n.7. The Second Circuit has held that "[a]n employee who complains solely about his own dissatisfaction with the conditions of his own employment is speaking upon matters only of personal interest. We make clear today, however, that it does not follow that a person motivated by a personal grievance cannot be speaking on a matter of public concern." *Sousa*, 578 F.3d at 174 (citation and quotation marks omitted). In *Sousa*, the Second Circuit reiterated that "a speaker's motive is not dispositive in determining whether his or her speech addresses a matter of public concern." *Sousa*, 578 F.3d at 173. Instead, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48.

Defendants argue that none of plaintiffs' speech addressed matters of public concern. The Court disagrees. With respect to plaintiffs' complaints about Daly, plaintiffs allege that they complained to defendants that Daly, *inter alia*, improperly authorized a mass mailing to support a Board of Education candidate, endangered students' safety by preventing plaintiffs from chaperoning a field

---

[5] Although defendants cite *Weintraub v. Board of Education of the City of New York*, 489 F. Supp. 2d 209 (E.D.N.Y. 2007) in support of their argument that the Court should conclude that plaintiffs spoke pursuant to their official duties, *Weintraub* involved a motion for summary judgment. *See id.* at 211. In the instant case, the Court has no factual record to consider and, based solely on the Amended Complaint, the Court cannot conclude that plaintiffs spoke pursuant to official duty.

9

trip on a boat, and improperly tutored students prior to their taking an exam. (Am. Compl. ¶ 30.) Although defendants argue that these are nothing more than job-related complaints by disgruntled employees, the Court cannot conclude at this stage that the speech does not address matters of public concern. To the extent the mass mailing in support of a Board candidate was an improper political activity, it can reasonably be considered a matter of public concern. *See Connick*, 461 U.S. at 149 (holding that plaintiff's speech about whether government employees were pressured to participate in political campaign touched on a matter of public concern). Similarly, plaintiffs' speech regarding Daly's alleged misconduct in tutoring students touches on the quality of public education, which is also a matter of public concern. *See Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir. 1996) (reversing district court's granting of motion to dismiss where plaintiff teacher complained about principal's misrepresentation of students' test scores and its effect on "the quality of education provided by the public school"); *Fierro v. City of New York*, 591 F. Supp. 2d 431, 443 (S.D.N.Y. 2008) ("The conduct and character of teachers and principals at a public school . . . reasonably qualifies as a matter that concerns the community."), *rev'd on other grounds by Fierro v. City of New York*, No. 08-3962-cv, 2009 WL 2223067 (2d Cir. July 27, 2009). Therefore, the Court cannot conclude at this stage of the proceedings that plaintiffs' complaints regarding Daly did not address matters of public concern. *See Rehman v. State Univ. of N.Y. at Stony Brook*, 596 F. Supp. 2d 643, 656 (E.D.N.Y. 2009) ("The Court finds that the plaintiff's complaints to . . . the President of SUNY Stony Brook, and others regarding billing practices, safety concerns, and credentialing of department members . . . were related to matters of public welfare, rather than merely to his own grievances, and are sufficient to survive the present motion to dismiss.").

Defendants also argue that plaintiffs' February 26 speech to students about the SEARCH program did not address a matter of public concern. However, plaintiffs allege that Kelly told the students to "ask their parents to attend the next Board of Education . . . meeting to speak out against changes to the SEARCH program." (Am. Compl. ¶ 42.) Plaintiffs allege that Lofaro told students about "a significant change" to the SEARCH program (*id.* ¶ 43) and that "she thought it was important for their parents [to] know about the fate of the program." (*Id.*) Taking plaintiffs' allegations as true, therefore, the speech related to important changes to a gifted education program and encouraged students' parents to participate in the next Board of Education meeting. Speech about the quality of an educational program can be a matter of public concern. *See McGuire v. Warren*, 207 F. App'x 34, 36 (2d Cir. 2006) (holding that speech by a teacher about the proper method for providing educational services to special needs children "might well be a matter of public interest") (collecting cases). In addition, as a general matter, speech that advocates for parental participation in school government addresses a matter of public concern. *See, e.g.*, *Hurdle v. Bd. of Educ. of City of N.Y.*, No. 01 Civ. 4703, 2002 WL 31834454, at *2 (S.D.N.Y. Dec. 16, 2002) ("[T]he lack of input [regarding a plan to address student performance] from the school staff and community, including parents of school children [at the school], into the formulation of the [plan] relates to matters of public concern." (citing *Pickering*, 391 U.S. at 574)); *see also Milliken v. Bradley*, 418 U.S. 717, 742 (1974) ("[L]ocal control over the educational process affords citizens an opportunity to participate in decision-making, permits the structuring of school programs to

10

fit local needs and encourages 'experimentation, innovation, and a healthy competition for educational excellence.'" (quoting *San Antonio Ind. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 50 (1973))).

Defendants argue, in response, that plaintiffs' February 26 speech did not implicate a matter of public concern because the speech "related to the change in their own teaching assignments at the school."[6] (Defendants' Mem. of Law in Support of Motion to Dismiss (hereinafter "Defs.' Br.") at 10.) The Court rejects this argument. As discussed above, neither a plaintiff's motive for the speech nor the fact that a plaintiff's speech relates to his job is dispositive in determining whether the speech addresses a matter of public concern. *See Pickering*, 391 U.S. at 572 ("Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal."); *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 166 (2d Cir. 2006) ("We do not doubt that [plaintiff] spoke partly to protect his job and shift blame to other administrators. But personal interests frequently induce speech that is nonetheless of public concern."). Defendants also argue that the proposed changes to the SEARCH program were not significant or a matter of public concern and that plaintiffs' assertions to the contrary are based on plaintiffs' "conclusory opinions" about plaintiffs' role in the program. (Defs.' Br. at 10 n.3.) Plaintiffs allege that two of the 2.5 SEARCH positions were being eliminated and that plaintiffs' own work was critical to the program. (Am. Compl. ¶¶ 23, 37.) The Court cannot resolve this factual issue on a motion to dismiss. Therefore, the Court concludes that plaintiffs have adequately alleged that their speech addressed matters of public concern.[7]

C. Adverse Action

"In the context of a First Amendment retaliation claim . . . retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Zelnick v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation omitted). "Adverse employment

---

[6] Defendants also make the somewhat confusing argument that plaintiffs cannot claim that the changes to the SEARCH program addressed a matter of public concern because plaintiffs also allege that the changes to the program were made in retaliation for their complaints about Daly. (Defendants' Reply Mem. of Law (hereinafter "Defs.' Reply Br.") at 8.) Defendants' alleged motivation for the changes to the SEARCH program, however, is not dispositive on the question of whether those changes were themselves a matter of public concern.

[7] Defendants argue that plaintiffs' statements about their having retained legal counsel and their intent to commence legal proceedings did not address matters of public concern because the underlying speech did not address matters of public concern. (Defs.' Br. at 15-16 n.5.) For the reasons discussed above, plaintiffs have adequately alleged that their speech addressed matters of public concern, and so the Court rejects this argument. *See Scott v. Goodman*, 961 F. Supp. 424, 436-37 (E.D.N.Y. 1997) (adopting Magistrate Judge's Report and Recommendation holding that adverse action in response to the threatened filing of a civil rights lawsuit can serve as the basis of a retaliation claim). Although defendants argue that plaintiffs only allege that they told defendants that they had obtained legal counsel and not that they intended to file a lawsuit, the Court disagrees. (*See* Am. Compl. ¶ 58.) In any event, the Court rejects defendants' argument that the mere retention of counsel is never protected by the First Amendment. *See Eng v. Cooley*, 552 F.3d 1062, 1069 (9th Cir. 2009) (collecting cases) (There is a "long-recognized First Amendment right to hire and consult an attorney.").

actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999). However, "lesser actions may also be considered adverse employment actions." *Id.*; *see also Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) ("Our precedent allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass." (citing *Bernheim*, 79 F.3d at 325)). Indeed, in the education context, "[a]dverse employment actions may include negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities." *Zelnick*, 464 F.3d at 226 (quoting *Morris*, 196 F.3d at 110).

Plaintiffs in this case have adequately alleged that they faced adverse employment action. After the August 2007 meeting with the Assistant Superintendent, plaintiffs allege that they "were forced to write the curriculum completely by themselves." (Am. Compl. ¶ 33.) On February 26, 2009, plaintiffs were told that their teaching positions with the SEARCH program were being eliminated. (*Id.* ¶¶ 36-38.) After their speech to students, plaintiffs were threatened with disciplinary proceedings.[8] (*Id.* ¶ 49.) Plaintiffs were eventually removed from their SEARCH positions (*id.* ¶ 57) and disciplinary proceedings were commenced against them. (*Id.* ¶ 58.) Although defendants argue that these allegations only relate to minor incidents and not adverse actions, the Court disagrees. For instance, a change in teaching responsibilities can constitute an adverse action if it is "materially less prestigious, materially less suited to [a plaintiff's] skills and expertise, or materially less conducive to career advancement." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000) (collecting cases). In addition, "the institution of disciplinary proceedings is sufficient in this circuit to constitute an adverse employment decision." *Skehan*, 465 F.3d at 106 (citing *Burkybile v. Bd. of Educ.*, 411 F.3d 306, 313-14 (2d Cir. 2005)). Accordingly, plaintiffs have adequately alleged an adverse action.

D. Causal Connection

Plaintiffs must also demonstrate a "'causal connection . . . sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action.'" *Cotarelo v. Sleepy Hollow Police Dep't*, 460 F.3d 247, 251 (2d Cir. 2006) (quoting *Blum v. Schlegel*, 18 F.3d 1005, 1010 (2d Cir. 1994)). A plaintiff can demonstrate this causal connection "indirectly 'by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus.'" *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2003) (quoting *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir. 1999)). Of course, the Court recognizes that the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir.

---

[8] Although defendants argue that the mere threat of disciplinary proceedings is not an adverse action, the Court disagrees. *See Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004) ("[T]he threat of administrative disciplinary proceedings . . . could have a deterrent effect . . . ."). In any event, as discussed above, disciplinary proceedings were allegedly brought against both plaintiffs.

2001), and courts must carefully consider the time lapse in light of the entire record. *See, e.g.*, *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (holding eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *see also Richardson v. N.Y.S. Dep't of Corr. Servs.*, 180 F.3d 426, 446-47 (2d Cir. 1999) (holding abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Plaintiffs in this action have adequately alleged a causal connection between their speech and the alleged adverse actions. Plaintiffs clearly have alleged evidence of retaliatory animus against them for their February 26 speech to students regarding the SEARCH program,[9] and defendants do not argue this point. Instead, defendants argue that plaintiffs have failed to allege a causal connection between the alleged adverse actions and plaintiffs' complaints about Daly.

Plaintiffs first complained about Daly in August 2007. (Am. Compl. ¶ 31.) When plaintiffs made this complaint, they were told by the Assistant Superintendent to "learn to play nice in the sandbox."[10] (*Id.* ¶ 32.) Plaintiffs allege that, thereafter, Daly's misconduct grew worse, forcing them "to write the [second grade] curriculum completely by themselves." (*Id.* ¶ 33.)

---

[9] For instance, following the speech to students, Lofaro was told that "she would face some sort of discipline for her actions, and that the Administration and the Board were going to make an example of her." (Am. Compl. ¶ 47.)

[10] Lofaro was also told by the Assistant Superintendent of personnel in August 2007 that her "edge" had come out in an August 2007 interview. (Am. Compl. ¶ 27.)

Plaintiffs do not specifically allege any other adverse action until February 2009, when they were informed that their SEARCH positions were being eliminated. (*Id.* ¶¶ 36-38.) Defendants argue that the length of this time period between plaintiffs' August 2007 complaints about Daly and the February 26, 2009 meeting in which plaintiffs were told that their SEARCH positions were being eliminated defeats a causal connection as a matter of law. The Court disagrees. First, plaintiffs allege not only that they complained about Daly in August 2007 but also that they "continued to complain to Defendants about Daly's misconduct." (*Id.* ¶ 34.) In addition, plaintiffs argue that Daly's misconduct, which forced them to do additional work, was itself retaliatory. Given the allegations regarding plaintiffs' continued complaints, defendants' reaction to those complaints, and Daly's forcing plaintiffs to do more work, the Court concludes that plaintiffs have adequately alleged a causal connection between their complaints and the alleged adverse actions. *See Shanks v. Vill. of Catskill Bd. of Trs.*, --- F. Supp. 2d ---, No. 1:06-cv-1399, 2009 WL 2868240, at * 7 (N.D.N.Y. Sept. 2, 2009) ("[T]he court rejects defendants' contention that the length of time between [plaintiff's] January 2006 complaint and the December 2008 termination breaks the potential causal connection between the protected speech and the discharge. Despite the delay between [plaintiff's] complaint and his termination, there is abundant evidence that defendant's harassing and threatening conduct continued unabated throughout this period and was related to the . . . complaints." (citing *Mandell v. County of Suffolk*, 316 F.3d 368, 384 (2d Cir. 2003))).

### E. *Pickering* Balancing Test[11]

Defendants also argue that, even if plaintiffs have adequately alleged that their February 26 speech to students was protected, their claims must be dismissed under the *Pickering* balancing test.[12] Under *Pickering*, if plaintiffs' otherwise protected speech disrupts the government's activities such that the harm caused by the disruption outweighs the value of plaintiffs' speech, the government can regulate that speech. *See Skehan*, 465 F.3d at 106; *Cobb*, 363 F.3d at 101. Defendants argue that their interest in regulating teachers' speech to students during class time about personnel decisions outweighs any of plaintiffs' interests in the speech. The analysis under *Pickering*, however, is a "fact-sensitive" inquiry. *Bd. of County Comm'rs, Wabaunsee County, Kansas v. Umbehr*, 518 U.S. 668, 677 (1996). In this case, there is a factual dispute surrounding the circumstances of plaintiffs' February 26 speech to students. Plaintiffs allege that the speech was at "dismissal time" (Am. Compl. ¶ 42) and defendants have submitted affidavits to contest this allegation. Given this factual dispute, the Court cannot determine whether plaintiffs' speech was disruptive or whether the harm caused by the disruption outweighed plaintiffs' interest in the speech. *See Sassone*, 598 F. Supp. 2d at 468 ("The Court does not see how [defendant] could make such a showing [under *Pickering*], considering that the Court is limited to consideration of the Amended Complaint."). Furthermore, even if defendants did prevail under the *Pickering* test, plaintiffs could still proceed if they showed that defendants were motivated by retaliation and not by any disruption caused by the speech. *See Reuland*, 460 F.3d at 415. The factual question of defendants' motivation is also inappropriate at this time. *See Sheppard v. Beerman*, 18 F.3d 147, 151 (2d Cir. 1994) ("[T]he motive behind [plaintiff's] firing in his retaliation claim is clearly a question of fact. Because this question is in dispute, it was improper for the district court to answer it on a motion for dismissal on the pleadings." (citation omitted)).

In sum, given the allegations in the Amended Complaint, plaintiffs have alleged a plausible First Amendment Section 1983 claim that survives a motion to dismiss.

### IV. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the Amended Complaint is denied in its entirety. The case will proceed with discovery under the direction of Magistrate Judge Orenstein.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:      December 23, 2009
              Central Islip, New York

---

[11] Plaintiffs argue in their brief that, at the time of trial, *Pickering* is not the appropriate standard because plaintiffs argue that they have alleged a prior restraint on their speech. Because the Court rejects defendants' *Pickering* argument at this stage, the Court need not address this additional argument by plaintiffs.

[12] Defendants do not specifically argue that *Pickering* warrants dismissal of the First Amendment claims as to plaintiffs' other speech. In any event, the allegations regarding the other speech are sufficient to survive a motion to dismiss on that ground.

* * *

The attorney for plaintiff is Steven A. Morelli, Law Office of Steven A. Morelli, P.C., One Old Country Rd., Suite 347, Carle Place, NY 11514. The attorneys for defendants are Steven C. Stern and Mark A. Radi, Sokoloff Stern LLP, 355 Post Ave., Suite 201, Westbury, NY 11590.